UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ROBERT W. SEIDEN, Esq., Receiver for
CHINA NORTH EAST PETROLEUM
HOLDINGS LIMITED,

      Plaintiff,

 -v-                                          No. 17 CV 02583-LTS

BAKER TILLY HONG KONG LIMITED,

      Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert W. Seiden, Esq. ("Seiden"), as receiver for China North East Petroleum Holdings Limited ("the Company"), moves for a default judgment against Defendant Baker Tilly Hong Kong Limited ("Baker Tilly"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and S.D.N.Y. Local Civil Rule 55.2(b), on claims arising from Baker Tilly's alleged negligence in performing an audit and issuing an audit report for the Company. Baker Tilly has not appeared or responded to the claims asserted against it in this action, despite having been afforded ample time and opportunity to do so.

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 and § 1367.

The Court has reviewed Plaintiff's submissions carefully and, for the following reasons, Plaintiff's motion for default judgment is granted.

## BACKGROUND

The following recitation of facts is drawn from Plaintiff's First Amended Complaint (docket entry no. 11, the "FAC"), as well as uncontroverted documentary evidence submitted by Plaintiffs in connection with the instant motion practice. In light of Baker Tilly's

failure to respond to the FAC, Plaintiff's well-pleaded factual allegations are deemed admitted. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."). Plaintiff's additional factual proffers are uncontroverted.

The Company is a Nevada corporation first registered on August 26, 1999. (FAC ¶ 3.) Plaintiff was appointed as the receiver for the Company by the Second Judicial District Court of the State of Nevada in and for the County of Washoe in the action Amy Liu, et al. v. China North East Petroleum Holdings Limited, Case No. CV15-02299. (FAC ¶ 2; Acceptance of Receivership, docket entry no. 32-2.) According to the Company's SEC Forms S-3 and 10-K, it maintained principal executive offices in New York, NY. (Seiden Decl., Exs. 7 and 9.) Its shares were traded on the NASDAQ, which is located in New York and, according to the FAC, a substantial part of the events giving rise to the claims against Defendant occurred in New York. (FAC ¶ 7.) Defendant is a private limited company registered in Hong Kong with limited shares; its shareholders are domiciled in Hong Kong. (Id. ¶ 4.) Defendant is a Public Company Accounting Oversight Board-registered audit firm. (Id.)

Beginning on or before January 2009, Wang Honjun ("Wang"), who was then the Chairman of the Company's Board of Directors and CNEP's President and CEO, and Ju Guizhi ("Ju"), one of the Company's founders, engaged in numerous, undisclosed, related-party transactions involving the Company. (FAC ¶ 8.) In support of this allegation, Plaintiff proffers an Independent Accountant's Report prepared by John Lees Associates for the Company's Board of Directors (the "Independent Audit"), which indicates that 176 transactions occurred without specific Board approval in 2009 (Independent Audit, docket entry no. 32-5, § 1.4.3) and bank statements which show that transfers were made to company insiders or their family members in

2009. (FAC ¶¶ 15-16, 22; Bank Statements, docket entry no. 32-7.) These transactions totaled at least $59 million.[1] (FAC ¶¶ 8-9.)

Baker Tilly was retained to audit the Company's December 31, 2009, financial statements. (FAC ¶ 18.) In the engagement letter, Baker Tilly agreed that its audit would "express an opinion on the financial statements in accordance with the [G]enerally [A]ccepted [A]ccounting [P]rinciples accepted in the United States ("GAAP")." (FAC ¶ 19; Engagement Letter, docket entry no. 32-3.) The agreement also provided that the audit of "the financial statements [would] be conducted in accordance with the standards established by the Public Company Accounting Oversight Board (PCAOB) and [would] include tests of the Company's accounting records and other procedures we consider necessary to enable us to express our opinion." (FAC ¶ 19, Engagement Letter.) Finally, the engagement letter stated that Baker Tilly would conduct independent tests to verify and document evidence it receive[d] from the company so that the financial statements would be "free of material misstatements." (FAC ¶ 20; Engagement Letter.)

During the audit and before Baker Tilly issued its audit opinion (the "Audit Opinion"), Baker Tilly was advised that the Company had engaged in 176 related-party transactions totaling over $59 million in 2009. (FAC ¶ 22.) Baker Tilly also encountered a number of red flags suggesting that those transactions involved a high risk of fraud, such as the fact that the chairman of the Company's Audit Committee had resigned due to concerns related to the transactions, and Baker Tilly itself determined that the Company's internal controls

---

[1] Plaintiffs allege that transactions totaled approximately $59 million. The Independent Audit indicates that the 176 transactions totaled 268,488,937.27 Renminbi. (Independent Audit § 1.4.3.) It also noted that there was a total balance of 135,424,009.33 Renminbi due from Ju and Wang. The Renminbi is the official currency of the People's Republic of China. Renminbi, Merriam-Webster's Collegiate Dictionary (10th Ed. 1999).

relating to such transactions were seriously deficient. (FAC ¶ 23.) The Independent Audit also raised other red flags such as the ability of management to override internal controls and access the Company's bank accounts; the possibility of other unauthorized related-party transactions, including cash withdrawals and payments to vendors and investors, made by insiders on behalf of CNEP without authorization due, in part, to insufficient verification of payments; inadequate segregation of duties among employees in accounts payable and cash management departments that could result in the misappropriation of Company funds; an incomplete audit trail for related-party transactions; convoluted and inappropriate account offsets of amounts owed to the Company by insiders, including Wang and Ju, based on agreements that were largely unsigned and contained contradictory statements or amounts; and varied explanations and numerous other anomalies were noted in documentation of the transactions related to fixed asset prepayments to suppliers that were purportedly paid through Ju's personal account. (See generally, Independent Audit.) Given these red flags, Baker Tilly failed to plan and implement an audit response to the related-party transactions. (FAC ¶ 24.) Contrary to GAAP, the Company's December 31, 2009, financial statements did not disclose the related-party transactions other than as a single entry showing a balance of $89,269 due to a shareholder. (FAC ¶ 25; Form 10-K, docket entry no. 32-6 at F-3.) Baker Tilly also failed to abide by its own agreed upon obligations by failing to conduct any independent testing to ensure that there were no material misstatements in the Audit Opinion. (FAC ¶ 26.)

Baker Tilly issued an Audit Opinion regarding the Company's 2009 financial statements knowing that it would be filed with the Company's 2010 Form 10-K. (FAC ¶ 27.) The Audit Opinion stated that the audit had been conducted in compliance with PCAOB

standards and that the Company's financial statements fairly and accurately reflected the company's position and results in conformity with GAAP. (FAC ¶ 27.)

Plaintiff commenced this action against Baker Tilly on April 11, 2017. (Docket entry no. 1.) Plaintiff filed the FAC on May 12, 2017, setting forth six causes of action. On May 22, 2017, Plaintiff served the summons and the FAC on Baker Tilly by FedEx, which confirmed delivery on May 24. (Affidavit of Service, docket entry no. 12.) When Baker Tilly failed to appear or file an answer, Plaintiff requested entry of a certificate of default against Defendant, which was entered by the Clerk of Court on December 21, 2017, and then moved for default judgment on May 1, 2018. (Docket entry nos. 24, 30.)

On May 2, 2018, Plaintiff filed a certificate confirming that service of the motion for default judgment had been made by FedEx. (Docket entry no. 33.) In this motion, Plaintiff has elected to pursue a default judgment only as to Count Two of the FAC, which alleges that Baker Tilly acted with negligence and gross negligence when it breached its duty to the Company by knowingly providing a false Audit Opinion that was not developed in compliance with GAAP or PCAOB standards. (Mem. in Supp. at 12, docket entry no. 31; FAC ¶ 34.).

DISCUSSION

Service

Pursuant to Federal Rule of Civil Procedure 4(f)(2)(A), service on a defendant in a foreign country may be accomplished by methods reasonably calculated to give notice, if there is no internationally-agreed means, or there is an international agreement that allows other means of service but does not specify such means. The Supreme Court has confirmed that Article 10(a) of the Hague Convention does not preclude service by mail on foreign defendants in countries that do not object to that article. Water Splash, Inc. v. Menon, 137 S. Ct. 1504 (2017). Courts

have specifically found that service by mail, including FedEx, to Hong Kong is authorized by Federal Rule of Civil Procedure 4(f)(2)(A) if, consistent with Hong Kong law, service was (or in the deponent's opinion was anticipated to be) received by the defendant within 7 days of mailing and was not returned to the plaintiff.  In re Coudert Brothers LLP, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *8-12 (S.D.N.Y. May 10, 2017).  Based on Plaintiff's May 24, 2017, affidavit of service, the Court finds that Defendant was properly served.

Default Judgment

In determining whether to grant a motion for default judgment, courts within this district first consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment).  The Court finds that all three factors weigh in Plaintiff's favor.  Baker Tilly's failure to respond to Plaintiffs' FAC and the instant motion is indicative of willful conduct.  See Indymac, 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct). Moreover, the Court is unaware of any meritorious defenses and, because Baker Tilly failed to appear, it has not proffered such a defense.  Finally, the Court finds that Plaintiff will be prejudiced and left with no alternative recourse if denied the ability to seek judgment by default.

Although Baker Tilly has not appeared to defend this action and the Clerk of Court has entered a certificate of default, this Court must determine "whether the allegations in

Plaintiff's complaint are sufficiently pleaded to establish [Baker Tilly's] liability." Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012). Plaintiff moves for default judgment on only his Second Cause of Action, which alleges negligence and gross negligence. Plaintiff contends that Baker Tilly's negligent acts or omissions constituted a breach of Baker Tilly's professional duty, owed to the Company, Baker Tilly's client, to exercise due care, resulting in the misappropriation of at least $59 million. Plaintiff further contends that Baker Tilly acted in a grossly negligent manner by knowingly providing a false Audit Opinion that was not compliant with GAAP or PCAOB standards, conducting an international audit without even the slightest diligence before offering its Audit Opinion, and ignoring red flags and warnings about the related-party transactions.

To assert a claim for professional negligence against an auditor or accountant, a plaintiff must establish the existence of a professional relationship and a failure to exercise due care, which may be demonstrated by material deviation from recognized and accepted professional standards, such as GAAP, which proximately causes damage to plaintiff. Cumis Ins. Soc'y Inc. v. Tooke, 739 N.Y.S.2d 489, 493 (App. Div. 2002). Courts have characterized gross negligence as an act or acts that "smack of intentional wrongdoing" or a "failure to exercise even slight care," where there were "several acts of negligence with foreseeably severe cumulative effect." See, e.g., Colnaghi, U.S.A., Ltd., v. Jewelers Prot. Servs., Ltd., 81 N.Y.2d 821, 824 (1993); Food Pageant, Inc. v. Consol. Edison Co., 54 N.Y.2d 167, 172 (1981); Internaitonale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co, 261 A.D.2d 117, 122 (App. Div. 1999) (citing id.).

The allegations in the FAC, along with the proffered evidence, demonstrate that the Company was Baker Tilly's professional client. Furthermore, Baker Tilly affirmed in the

engagement letter that it recognized its duty to abide by GAAP and PCAOB standards.  Thus, the record establishes that Baker Tilly had a duty to exercise the ordinary care, skill, or diligence that an auditor of ordinary skill and knowledge commonly possesses.

The allegations and evidence proffered establish that 176 unapproved and undisclosed related-party transactions took place in 2009, of which Baker Tilly was made aware.  Plaintiff also demonstrates that the Defendant ignored multiple "red flags" suggesting that these transactions involved a high risk of fraud and that Baker Tilly "failed to plan and implement an appropriate audit response to these related-party transactions in compliance with PCAOB standards."  (FAC ¶ 24.)

Despite this information, Baker Tilly's Audit Opinion, which it knew would be publicly filed with the Company's Form 10-K, did not disclose the related-party transactions, other than to show a small net balance due to a single shareholder.  Thus, the statements failed to provide a description of the transactions, the nature of the relationships involved, the amounts involved, and other information that may be necessary to understand the effects of the significant and unusual transactions on the financial statements as required by U.S. GAAP.  See Druskin v. Answerthink, Inc., 299 F. Supp. 2d 1307, 1328 (S.D. Fla. 2004) ("GAAP FASB 57 requires financial statements to include disclosures of material [related-party] transactions. The disclosures shall include (a) the nature of the relationships involved, (b) a description of transactions . . . (c) the dollar amounts of transactions, and (d) amounts due from related parties.").  Similarly, Baker Tilly failed to abide by PCAOB standards for instances in which an auditor determines that undisclosed related-party transactions exist.  See Auditing Standard 2410: Related Parties, PCAOB Release No. 2014-002 (June 10, 2014), available at https://pcaobus.org/Standards/Auditing/Pages/AS2410.aspx) (listing responsibilities of auditors

regarding related-party transactions such as assessing the need to take additional steps to identify other transactions).

This uncontroverted record of GAAP violations, ignored red flags, and knowing failure to disclose the related-party transactions, establishes that Baker Tilly knowingly acted in a manner so different in kind and degree from ordinary negligent conduct as to constitute gross negligence.  See Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 437 (S.D.N.Y. 2010) (finding allegations that defendants ignored numerous red flags sufficient state a claim for gross negligence).  These allegations and the evidence demonstrate that Baker Tilly breached its duty to Plaintiff by providing a false Audit Opinion and failing to adhere to the relevant professional standards.

Finally, with regard to causation, Plaintiff must show that it was reasonably foreseeable that the damages incurred would follow from the wrongful act.  In re Allou Distributors, Inc., 395 B.R. 246, 268 (Bankr. E.D.N.Y 2008).  Here, Plaintiff asserts that the Company relied on Baker Tilly's audits, and that Baker Tilly's concealment of the misappropriations caused the Company's permanent loss of the misappropriated funds.  See ATC Healthcare Inc. v. Goldstein, Golub & Kessler LLP, 28 Misc. 3d 1237(A), 958 N.Y.S.2d 59 (Sup. Ct. 2009) (stating that proximate cause exists where it is reasonably foreseeable that a plaintiff's damages would have been limited had the defendants not acted as they did) (citing id. at 268-69); (FAC ¶¶ 32, 52-53).  These  uncontroverted allegations are sufficient to establish that Baker Tilly's departure from acceptable accounting standards was the proximate cause of damages.  Accordingly, Plaintiff has satisfied the elements required to establish liability on his Second Cause of Action for Baker Tilly's negligence and gross negligence.

Default Damages

Plaintiff alleges that the Company suffered at least $59 million in damages arising from the related-party transactions. While the evidence proffered does establish the occurrence of related-party transactions, Plaintiff does not proffer evidence establishing that the funds were exclusively withdrawn for personal use and that no portion of that sum was used to make payments related to the Company's operations. Because the actual damages to the company are uncertain, the Court finds that an inquest into the compensatory damages is necessary.

Plaintiff also seeks punitive damages. Plaintiff contends that the injuries resulting from Baker Tilly's gross negligence entitle the Company to exemplary damages in the amount necessary to punish Baker Tilly and to deter similar conduct by others. Under New York law, an award of punitive damages is permitted when "the defendant's wrongdoing is not simply intentional but evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations." Tiffany and Co. v. Costco Wholesale Corp., 127 F. Supp. 3d 241, 261 (S.D.N.Y. 2015) (quoting Ross v. Louise Wise Servs. Inc., 868 N.E.2d 190, 196 (2007) (internal quotation marks and citations omitted). Plaintiff's unchallenged factual allegations of deliberate and aggravated conduct by Defendant Baker Tilly, including knowingly failing to plan and implement an appropriate audit response to related-party transactions, knowingly failing to disclose related-party transactions in the Company's financial statements, and knowingly failing to comply with its responsibility to act in accordance with PCAOB and GAAP standards, are sufficient to support an award of punitive damages. The Court finds that an inquest into the appropriate amount of punitive damages is also necessary.

Furthermore, the Court grants Plaintiff's request for prejudgment interest at the New York State rate of 9% per annum from September 30, 2010 through the date judgment is entered is warranted. N.Y. C.P.L.R. §§ 5001(a), 5004.

Finally, Plaintiff has provided no authority to support its request for attorneys' fees, which is, accordingly, denied. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) ("Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment on Count Two of the FAC as against Baker Tilly is granted. The remaining Counts will be dismissed without prejudice when judgment is entered. This case is hereby referred to Magistrate Judge Sarah Netburn for an inquest into compensatory and punitive damages and attorney's fees. Plaintiff's counsel is directed to contact Judge Netburn's chambers promptly to make arrangements for inquest proceedings. This Memorandum Order resolves docket entry no. 30.

SO ORDERED.

Dated: New York, New York
March 22, 2019

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge