UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT W. SEIDEN, Esq., Receiver for
CHINA NORTH EAST PETROLEUM
HOLDINGS LIMITED,

                           Plaintiff,

                -against-

BAKER TILLY HONG KONG LIMITED,

                           Defendant.

17-CV-02583-LTS

---

**M<small>EMORANDUM</small> O<small>RDER</small>**

        Plaintiff Robert W. Seiden, Esq. ("Seiden"), as receiver for China North East Petroleum Holdings Limited ("CNEP"), brought this action asserting state law claims for breach of contract, negligence and gross negligence, breach of fiduciary duty, participation in a fraudulent scheme, constructive fraud, and unjust enrichment against Defendant Baker Tilly Hong Kong Limited ("BTHK", together with Seiden, the "Parties").  (Docket entry no. 11 ("First Amended Complaint" or "FAC").)  These claims arose from BTHK's alleged misconduct in performing an audit and issuing an audit report for CNEP in 2010.  (FAC ¶¶ 18-27.)  The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. sections 1332 and 1367.

        Following BTHK's failure to appear or respond to the claims asserted against it in this action, Seiden moved for default judgment on May 2, 2018.  (Docket entry nos. 24, 30.)  On March 22, 2019, the Court issued an order granting the motion as to Plaintiff's negligence and gross negligence causes of action and referring the matter to Magistrate Judge Netburn for an inquest into damages.  (Docket entry no. 40.)  Upon receiving service of Judge Netburn's report and recommendation (docket entry no. 53), BTHK appeared and moved under Federal Rule of Civil Procedure 12(b)(2) to dismiss the FAC, arguing that it is not subject to the personal

jurisdiction of this Court. (Docket entry no. 60.) The Court denied the motion without prejudice and ordered the parties to engage in jurisdictional discovery. (Docket entry nos. 76 and 77.) Defendant subsequently re-filed its motion to dismiss the FAC (docket entry no. 90, the "Motion to Dismiss"), which is now before the Court. Plaintiff opposes the motion, arguing that the Southern District of New York has specific personal jurisdiction over the Defendant pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302.[1]

The Court has carefully considered the submissions of the parties. For the foregoing reasons, BTHK's Motion to Dismiss is granted.[2]

BACKGROUND

The following facts are drawn from the pleadings, declarations, and affidavits submitted by the Parties, and are undisputed unless otherwise specified. The Court provides background only to the extent necessary to resolve the pending Rule 12(b)(2) motion to dismiss the FAC for lack of personal jurisdiction.

The Parties

CNEP is a Nevada corporation with operations located exclusively in the People's Republic of China ("China"). (FAC ¶¶ 3, 18.) At the time of its relationship with BTHK, CNEP functioned as a holding company with five companies, all devoted to oil exploration and production in Northern China, under its umbrella. (Docket entry no. 92 ("Tolbert Decl.") Ex. 1

---

[1] Plaintiff concedes that BTHK has not waived its right to challenge jurisdiction by appearing after the entry of default judgment. (Docket entry no. 106 at 18.)

[2] The Court notes that, in deciding Plaintiff's motion for default judgment, the Court found assertion of personal jurisdiction appropriate on the basis of a record that has since been substantially augmented due to the extensive jurisdictional discovery conducted by the Parties.

("10-K Form") at 5.)  In its Form 10-K report filed with the SEC on September 3, 2010, CNEP stated that it maintains its "principal executive office" in New York, NY (id. at 1), but that its "principal headquarters" are located in Song Yuan City, China, where it maintains a 7,747 square foot facility that "houses all of [CNEP]'s administrative and clerical staff."  (Id. at 21.)  In the same report, CNEP stated that it maintains "administrative offices in Harbin City, China and New York City, United States."  (Id.)  During its relationship with BTHK, CNEP's shares were traded on the New York Stock Exchange.  (Id. ¶ 7; Ex. 2 ("SEC Order") at 4.)   Seiden avers that, "as the principal place of business in the U.S., the chairman of the board of CNEP used the New York office to conduct business at and send correspondence from regarding the operations of CNEP."  (Docket entry no. 106 ("Pl. Opp.") at 4.)  CNEP further states that it "had at least one corporate officer at the New York principal headquarters," that "all of the board of directors of CNEP used the New York address and correspondence directed to the board was sent to the New York address," that "CNEP always directed and operated its business from the New York address," and that "CNEP's attorneys always contacted CNEP at its New York office relating to issues about their engagement and payment for services."  (Pl. Opp. at 4-6.)

        BTHK is a private limited company and audit firm registered in Hong Kong with limited shares; its shareholders are domiciled in Hong Kong.  (FAC ¶ 4.)  BTHK's sole office is located in Hong Kong.  (Docket entry no. 93 ("Lo Aff.") ¶ 3.)  BTHK has never maintained an office, stationed employees, owned real property, or been served with process in New York.  (Id. ¶¶ 3-6.)  BTHK's clients "are mainly companies incorporated in and/or operating in Hong Kong or the People's Republic of China.  BTHK registers with, and receives permits from, the China Ministry of Finance when its auditors travel to China for the performance of audit work."  (Id. ¶ 7.)  It is not registered with the New York Department of State to conduct business activities in

New York, and "neither BTHK nor any of its directors has ever been licensed by the New York State Board for Public Accountancy," meaning that BTHK "cannot provide audit services in the State of New York, and it has never done so." (Id. ¶ 8.)

On May 2, 2016, Plaintiff Seiden was appointed as receiver for CNEP by the Second Judicial District Court of the State of Nevada in and for the County of Washoe in the action Amy Liu, et al. v. China North East Petroleum Holdings Limited, Case No. CV15-02299. (FAC ¶ 2; docket entry no. 32, Ex. 2.)

The Origins of CNEP's Relationship with BTHK

BTHK became CNEP's independent public accountant in 2010 following a merger with Jimmy C.H. Cheung & Co. ("JCHC"), a Hong Kong audit firm that had audited CNEP's financial statements from 2004 to 2008. (FAC Ex. 2, (the "SEC Order") at 4.) Under the terms of the merger, BTHK absorbed JCHC's "US audit practice," resulting in "all full-time employees of the US audit practice of JCHC [] becom[ing] full time employees of BTHK." (Lo Aff., Ex. 6 at 3 (the "Merger Letter").) Defendant avers, and Plaintiff does not dispute, that the merger was negotiated entirely in Hong Kong. (See docket entry no. 110 ("Cheung Aff.") ¶ 5.) Defendant also avers, and Plaintiff offers no evidence to dispute, that the merger was initiated by JCHC. (Id. ¶ 4.)

Due to the merger, JCHC notified CNEP of its resignation, effective February 3, 2010, as CNEP's independent registered accounting firm via a letter addressed to CNEP's New York Office. (Merger Letter.) Attached to that notification was "a letter of engagement for audit services for the year 2009, to be executed by" CNEP, "formaliz[ing]" CNEP's retention of BTHK as its new independent auditor. (Id.) This attached letter (Lo Aff. Ex. 6 (the "Letter of Engagement")), was then subject to revisions negotiated over email between Zhang Yang Dio,

CNEP's Chief Financial Officer, and Jimmy Cheung and Lung Wong, who were by then BTHK employees. (Id. ¶ 23.) Defendant avers, and Plaintiff does not dispute, that all parties to the negotiation were located in China or Hong Kong at the time of the negotiation. (Docket entry no. 91 ("Def. Mem.") at 4-5; Lo Aff. ¶ 23.) Following these negotiations, a revised version of the letter of engagement (Lo Aff. Ex. 10 (the "Agreement")), also addressed to CNEP's New York office, was forwarded to Portland, Maine, where it was executed by the Chairman of CNEP's Audit Committee on March 19, 2010, forming the contractual basis for the relationship between the Parties. (Lo Aff. ¶ 24; Ex. 10.)

BTHK's Performance of the Audit and Correspondence with CNEP

The Agreement required BTHK to audit CNEP's balance sheet as of December 31, 2009, "and the related statement of operations, stockholders' equity and comprehensive income, and cash flow for the year then ended." (Agreement at 1.) Performance of the audit took place entirely outside of New York and required no travel to New York. (Lo Aff. ¶ 8.) "No one from BTHK travelled to New York in connection with the audit of CNEP." (Id. ¶ 25.) To conduct the audit, BTHK personnel visited CNEP's offices in Harbin, China, to work with CNEP's internal accounting team. (Id. ¶ 25.) All work pertaining to the audit took place in China or Hong Kong. (Id.) Plaintiff avers no facts to the contrary.

Most of the correspondence pertaining to the audit appears to have been sent to CNEP's offices in China. While BTHK sent its first invoice to CNEP's New York address, Plaintiff's averment of facts indicates that BTHK "directed correspondence to China for payment of invoices once directed to do so by CNEP's senior VP of corporate finance, Mr. Jiang, from the New York office." (Pl. Opp. at 5.) Pursuant to this directive, BTHK submitted five invoices, as well as a notice of "final billing," to CNEP's office in China. (Lo Aff., Exs. 13, 14, 15, 17, 18,

19.) When BTHK sent an email to CNEP's Director of Corporate Finance in New York regarding a delinquent payment, they were again directed to reach out to CNEP's accounting team in China. (Lo Aff. Ex. 16.) However, subsequent to the completion of the audit, BTHK submitted a report, addressed to "The Directors" of CNEP, to CNEP's New York address. (Docket entry no. 107 ("Vanacour Decl.") Ex. 8.)

## Discussion

"Under Federal Rule of Civil Procedure 12(b)(2), a federal court must dismiss claims against a party where the court determines that it does not have personal jurisdiction over that party." Harbour Victoria Inv. Holdings Ltd. v. Chawla, 148 F. Supp. 3d 298, 300 (S.D.N.Y. 2015). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). If the district court has not "conduct[ed] a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Here, the Court has not conducted an evidentiary hearing, but "the parties have conducted extensive discovery regarding the defendant's contacts with the forum state[.]" Met. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). Under these circumstances, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Id. (modification omitted) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) cert. denied, 498 U.S. 854 (1990).

In deciding a Rule 12(b)(2) motion, the Court will "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). However, "resolving all doubts in plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." Vasquez v. Hong Kong & Shanghai Banking Corp., 477 F. Supp. 3d 241, 263 (S.D.N.Y. Aug. 10, 2020) (quotation omitted). To do so would require the Court to "ignore the basic notion that 'a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is inherently a matter requiring resolution of factual issues outside the pleadings.'" Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499, 503 n. 21 (S.D.N.Y. 2004) (citation omitted). Instead, the Court takes the Plaintiff's allegations "as true to the extent they are uncontroverted by the defendant's affidavits." MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012) (quotation omitted). Therefore, "[i]n deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider materials outside the pleadings." Al-Ahmed v. Twitter, Inc., 20-CV-4982-VEC, 2021 WL 3604577 (S.D.N.Y. Aug. 11, 2021). "In other words, the standard is akin to that on a motion for summary judgment." Melnick, 346 F. Supp. 2d at 503 (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1010-11 (2d Cir. 1986)).

Courts recognize "two categories of personal jurisdiction: general and specific personal jurisdiction." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134 (2d Cir. 2014). General jurisdiction "permits a court to hear 'any and all claims' against an entity." Id. (citation omitted). "Specific personal jurisdiction, in contrast, subjects a defendant to suit only on claims that arise out of or relate to the defendant's conduct in the forum." Vasquez, 477 F. Supp. 3d at 251-52 (citing Cortland St. Recovery Corp. v. Deutsche Bank AG, No. 14-CV-01568-JPO, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015)). Here, Seiden does not contend that BTHK is subject

to general personal jurisdiction in New York. Therefore, only specific personal jurisdiction is at issue.

"[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits[.]" Arrowsmith v. United Press Intern., 320 F.2d 219, 223 (2d Cir. 1963). "If jurisdiction lies, [the Court] will consider whether the . . . exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." Licci ex rel. Licci v. Lebanese Canadian Bank, 732 F.3d 161, 168 (2d Cir. 2013). Seiden contends that the Court has specific personal jurisdiction over BTHK under subsection (a)(1) of New York's long-arm statute, N.Y. C.P.L.R. section 302, which provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1) (McKinney's 2008). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). "A non-domiciliary transacts business in New York by fully availing him or herself of the privilege of conducting laws within the State, thus invoking the benefits and protections of its laws." Ehrenfeld v. Mahfouz, 489 F.3d 542, 648 (2d Cir. 2007) (modifications and quotation omitted). Under these circumstances, "jurisdiction is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Vasquez, 477 F. Supp. 3d at 252 (quoting Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007)).

To determine whether a defendant has so availed itself, the Second Circuit considers a "variety of factors", including:

> (i) Whether the defendant has an on-going relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; [and] (iv) whether the contract requires [the party objecting to jurisdiction] to send notices and payments into the forum state or subjects them to supervision in the forum state.

Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). In the years since the Agency Rent A Car decision was issued, courts in this Circuit have increasingly considered an additional factor: the location of contract performance. See, e.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir. 1999). This fifth factor is of particular import when the claim for specific personal jurisdiction is reliant upon communications made into New York by the non-domiciliary party. See, e.g., DirecTV Latin America, LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 420 (S.D.N.Y. Jan. 26, 2010) (holding that "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself") (citation omitted)). Though it is not one of the original Agency Rent A Car factors, this element of jurisdictional analysis has been accorded considerable weight by courts in this Circuit. See Bissonnette v. Podlaski, 138 F. Supp. 3d 616, 624 (S.D.N.Y. 2015) (finding no personal jurisdiction over an Indiana attorney representing a New York client because, "[a]t bottom, here . . . the conduct at issue is the provision of legal services, specifically the performance of legal research and the rendering of legal advice — from outside New York"); see also Bank Brussels Lambert, 171 F.3d at 787-88 (finding no grounds for assertion of personal jurisdiction over a Puerto Rican law firm that drafted, entirely in Puerto Rico, a legal opinion for

New York plaintiff); see also Stair v. Calhoun, 07-CV-03906-JFB, 2009 WL 792189, at *7 (E.D.N.Y. Mar. 23, 2009) (finding no grounds for assertion of personal jurisdiction where "[n]owhere in the complaint do plaintiffs allege that the . . . defendants ever traveled to New York in connection with their representation, negotiated their retainer agreement in New York, or performed their services in New York").

"Although all [factors] are relevant, no one factor is dispositive. Other factors may be considered, and the ultimate determination is based on the totality of the circumstances." Agency Rent A Car, 98 F.3d at 29 (citation omitted). The Court will consider each of the factors in turn.

The first factor weighs in favor of Defendant BTHK because, although the Court finds that there was an ongoing contractual relationship between the Parties, CNEP is a not a New York corporation. (See FAC ¶ 3 ("CNEP is a Nevada domestic corporation first registered in Nevada on August 26, 1999.").) Though both parties make extensive arguments as to the location of CNEP's principal place of business, this is not the relevant inquiry for purposes of personal jurisdiction. See Bucephalus Alt. Energy Grp., LLC v. KCR Dev., No. 08-CV-7343, 2009 WL 5179091, at *5 (S.D.N.Y. Dec. 23, 2009) (weighing the first Agency Rent A Car factor against Pennsylvania-incorporated plaintiff where, "although [plaintiff] has its principal place of business in New York, it is not a New York corporation"). As CNEP is not a New York corporation, the factor weights in favor of Defendant.

Reviewing the second factor, the record indicates that the Agreement was not negotiated or executed in New York. Defendant proffers that the Agreement was executed in Portland, Maine, which Plaintiff does not dispute, acknowledging that "the contract's final execution may have occurred somewhere else outside of New York." (Pl. Opp. at 9.) Regarding

the Agreement's negotiation, Plaintiff avers no facts other than stating that "BTHK . . . through its agent after the merger . . . reached out to CNEP in New York" and that "the engagement letter sent by BTHK to engage as CNEP auditor was addressed to CNEP's Chief Executive Office at the New York office." (Pl. Opp. at 9.) Plaintiff therefore does not aver facts that, even if uncontroverted, would support a finding that the Agreement was negotiated in New York.[3] Further, Defendant proffers that the negotiation took place over e-mail between parties located in China and Hong Kong. (Lo Aff. ¶¶ 23, 24.) The Court accordingly finds that the second factor weighs in favor of the Defendant.

Reviewing the third factor, the Court notes that the Agreement contains no choice-of-law clause pointing to the application of New York law. This factor therefore does not support assertion of personal jurisdiction over BTHK. See, e.g., Broumand v. Joseph, 522 F. Supp. 3d 8, 17 (S.D.N.Y. Feb. 27, 2021) (finding that "there is no evidence that respondents have signed any contract with a choice-of-law clause" "cut[s] against a finding of personal jurisdiction").

Reviewing the fourth factor, the Court finds that Plaintiff has failed to establish that the Agreement required Defendant to send notices and payments into New York. The Agreement requires that correspondence be sent "to the Company [CNEP]" but does not specify a geographical location. The Court therefore refers to the record to determine where correspondence was submitted in performance of the Agreement and finds nothing indicative of

---

[3]  Plaintiff also avers no facts indicating that representatives ever visited New York in connection with the Parties' contractual relationship, though Plaintiff correctly notes that the importance of this factor has declined as technology renders in-person visitation less necessary to conduct business. See, e.g., DLJ Mortg. Cap., Inc. v. Cameron Fin. Grp., Inc., 2007 WL 4325893 n. 10 (S.D.N.Y. Dec. 4, 2007) ("The Court also notes that New York law has moved away from the requirement of having a physical meeting in order to exercise jurisdiction.")

an obligation to send notices and payments to New York. In so finding, the Court notes not only that BTHK sent invoices relating to the audit to China, rather than New York, but that it did so at CNEP's direction. Having found no explicit requirement that correspondence be sent to New York, and considering CNEP's directions regarding performance, the Court finds that this factor weighs in favor of the Defendant.

Finally, Plaintiff has failed to establish that performance of the Agreement took place in New York, and Defendant has proffered creditable evidence that it did not. Plaintiff presents no facts regarding the performance of the actual audit. Defendant proffers that BTHK traveled to CNEP's offices in China to conduct fieldwork for the audit, and otherwise prepared its opinion in Hong Kong. (Lo Aff. ¶ 25 ("In connection with the Audit, BTHK personnel visited CNEP's offices in Harbin, China, where CNEP's internal accounting team was located. All of BTHK's work on the Audit was performed in at [*sic.*] CNEP's offices in China or at BTHK's offices in Hong Kong. No one from BTHK traveled to New York in connection with the audit of CNEP.").) Based on Defendant's proffers and Plaintiff's failure to aver to the contrary, the Court finds that Plaintiff has failed to carry its burden of showing that performance of the Agreement took place in New York. This factor weighs in favor of Defendant.

Having found that all five relevant factors weigh against the assertion of jurisdiction, and considering the totality of the circumstances, the Court finds that Plaintiff has failed to proffer facts supporting the exercise of personal jurisdiction over BTHK. Defendant was not engaged in an ongoing contractual relationship with a New York corporation — CNEP was incorporated in Nevada. The Agreement was neither negotiated nor executed in New York, and lacks a choice of law clause requiring application of New York law. The majority of correspondence pertaining to the Agreement was sent to China at Plaintiff's direction, and

Plaintiff has failed to provide facts indicating the performance of the Agreement took place in New York, rather than in China. For these reasons, the Court concludes that Plaintiff's contacts with New York are insufficient to confer jurisdiction under CPLR section 302(a)(1).

CONCLUSION

For the reasons discussed above, the Court's March 22, 2019, decision granting Plaintiff's motion for a default judgment against Defendant BTHK is vacated and BTHK's motion to dismiss this action for lack of personal jurisdiction is granted. This Order resolves docket entry no. 90.

The Clerk of Court is directed to vacate the order granting Plaintiff's default judgment motion (docket entry no. 40), enter judgment dismissing the First Amended Complaint for lack of personal jurisdiction, and close the case.

SO ORDERED.

Dated: New York, New York
August 14, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge